## Kentucky Utilities Co. v. Wiggins.

(Decided May 29, 1934.)

WHEELER, WHEELER & SHELBOURNE and GORDON, LAURENT & OGDEN for appellant.

L. B. ALEXANDER for appellee.

OPINION OF THE COURT BY CREAL, COMMISSIONER—Reversing.

E. E. Wiggins instituted this action in the McCracken circuit court against the Kentucky Utilities Company seeking to recover damages for personal injuries. In his petition which was filed on October 15, 1932, it is alleged, in substance, that the injuries complained of were brought about by the negligence of one of the company's servants in the operation of one of its busses while plaintiff was attempting to alight from it. The accident out of which the alleged injuries grew occurred on August 15, 1929.

In the first paragraph of its answer and as a bar to plaintiff's right of action the company pleaded and relied on the one-year statute of limitation in such cases. Ky. Stats. sec. 2516. In a second paragraph it traversed the allegations of the petition. In a third paragraph it is alleged that after appellant claimed to have sustained his injuries, he made a claim against the company for damages, and on September 16, 1929, it reached

and entered into an agreement of settlement with him which settlement was reduced to writing. The writing, including signatures of the parties and witnesses, reads:

"Paducah, Ky., September 16, 1929.

"For and in consideration of the sum of three hundred dollars and doctor and hospital bills, paid to E. E. Wiggins, by Kentucky Utilities Company, said E. E. Wiggins does hereby release, acquit and discharge the said company, its agents and employees, from any and all claims, demands, actions and rights of action he may now or hereafter have by reason of any or all injuries and damages sustained by him on the 16th day of August 1929, on account of the following described accident, viz:— while alighting from a bus in Arcadia, fingers were caught in the door and he was thrown to the ground and dragged, sustaining a fractured hip.

"And said E. E. Wiggins hereby acknowledges full payment and satisfaction of all said claims and demands. It is expressly understood by the parties that this is a contract and expresses the entire consideration for the agreements by them entered into. It is further expressly understood by the parties that in entering into this contract, the said company does not admit any legal liability.
"[Signed]    E. E. Wiggins
                "Kentucky Utilities Company,
                    "By J. W. McNeely,
                        "Safety Agent.

"I certify that I saw E. E. Wiggins sign the foregoing contract, that it was read to him before he signed it and that he stated to me that he fully understood same.
        "[Signed]    L. L. Still.
                "D. A. Wallace    Witnesses."

It further alleged that pursuant to this contract of settlement, it paid to plaintiff the sum of $300 and also paid all his medical and hospital bills. That thereafter on February 10, 1930, plaintiff again applied to it for a further sum, and as a matter of grace and through feeling of sympathy for him it paid the further sum of $100, and this further settlement and agreement between the parties was reduced to writing, which, including signatures, reads:

"On August 16, 1929, E. E. Wiggins was injured while alighting from a bus belonging to the Kentucky Utilities Company. Said accident happened on West Broadway in what is known as Arcadia, or Wallace Park.

"On the 16th of September, 1929, the Kentucky Utilites Company effected a settlement with said E. E. Wiggins, wherein and whereby it indemnified him for all pain, mental or physical, for all injury to his power to earn money, for all loss of time and hospital bills, which settlement was regularly and duly entered into between the parties, and which is now recognized and upheld by the said E. E. Wiggins.

"The said Wiggins, in addition to the sum of money heretofore paid him, has asked the Kentucky Utilities Company, as a matter of grace and charity, to pay him an additional One Hundred Dollars, which it has done, and the said E. E. Wiggins hereby acknowledges receipt of said One Hundred Dollars, and hereby agrees that he has fully settled with the said Kentucky Utilities Company for any and all injuries sustained by him on the 16th day of August, 1929, and for all suffering, mental or physical, for all loss of time, for doctor bills and hospital bills, and agrees that he will never again apply to the said Kentucky Utilities Company for any more money growing out of or connected with said accident of August 16, 1929. This is the 26th day of February 1930.

"[Signed] E. E. Wiggins

"Witnesses:

"B. B. Hook

"A. T. Grainger

"Safety Agent

"J. W. McNeely."

It alleged that by reason of these settlements plaintiff had no further claim against it.

In avoidance of defendant's plea of limitation, plaintiff alleged in his reply that during the month of October, 1929, defendant through its agent stated to him that, if he would forego prosecuting suit against it for damages on account of his injuries, "it would stand

by and help this plaintiff through while he was on crutches, and would give him a pass on its busses''; that, acting upon that agreement and in order to induce him to rely on these statements and not bring suit, the company did deliver to him the sum of $300, and that at another time and in compliance with a promise it gave him the further sum of $100; that he understood from defendant's agreement to stand by and help him through while he was on crutches that it would pay to him from time to time such amounts as were reasonably necessary to maintain and support him during the time he was required to use crutches and was unable to work, and that the company knew that he so understood the agreement; that the company did not repudiate its agreement until July 18, 1932, and that because of its conduct, representations and agreement he was induced to delay the institution of an action to recover for his injuries and therefore defendant is estopped to plead and rely on the statute of limitation. He denied that he entered into an agreement set out in the third paragraph of defendant's answer, but admitted that he received the sums referred to therein but that he received same under the agreement and understanding set out in the first paragraph of his reply. He further alleged that, if he signed the writing set up in the third paragraph of defendant's answer, he was unable to read the agreement, and his signature thereto was obtained by fraud and the false representations that the papers in question were only receipts to show the company he had been paid the sums specified.

The issues were completed by a rejoinder traversing the affirmative allegations of the reply. Thereafter defendant filed an amended answer and as a part thereof filed as exhibits the written agreements referred to in its original answer.

Trial before a jury resulted in a verdict and judgment for plaintiff in the sum of $1,000, and defendant is appealing. The main ground relied on for reversal is that the court erred in refusing to give instruction A offered by appellant, directing the jury to find for it, and the conclusion we have reached as to the proper disposition of that question renders consideration of any other ground unnecessary.

As a basis for the contention that the court erred in this particular, it is argued (1) that appellee wholly

failed to sustain his plea that his signature to the settle-ment and releases set up in appellant's answer was pro-cured by fraud; and (2) that appellee's action was barred by the one-year statute of limitation and there is no evidence to sustain the plea that appellant is es-topped to plead and rely upon that statute.

As to the evidence bearing on the execution of the writings referred to in pleadings and filed with the amended answer and the attending circumstances, it ap-pears that the writing dated September 16, 1929, was signed at the hospital where appellee was confined on account of his alleged injuries. J. W. McNeely, appel-lant's superintendent at Paducah, testified that he rep-resented the company in the settlement; that he was accompanied to the hospital by D. A. Wallace, who to-gether with L. L. Still witnessed the written agreement. He and the subscribing wtinesses testified that, before the writing was signed, it was read to appellee by Mr. McNeely and was then handed to appellee, who put on his glasses and looked at it for some time and appeared to be reading it; that he stated that he understood it. Following the execution of the writing, appellee was paid the sum of $300, and thereafter the company paid all of his hospital bill and medical bills, aggregating something over $500.

Appellee testified that he did not read the contract, but, when called in rebuttal, he was asked this question, "Was it read over to you?" to which he answered, "Yes, sir, I could not read it." When asked what Mr. McNeely said about the paper, he replied that McNeely stated, "There has to be something to show that you got this money, this has to go to the head office." When asked what agreement or understanding was had about the settlement of the case, he testified:

"He said he was going to help me, that he would see me through, and that's what I thought it was for. * * * The understanding was, after I talked to him, that if they would help me out until I got well I did not want to sue and go to law. * * * He said he would see me through I heard that all the time in the hospital. He told me not to leave the hos-pital until I was perfectly able. He said, 'If you stay here 6 months we will pay for it,' and he talked awfully pretty."

He further testified that in February and after he

left the hospital he went to the company's office and told Mr. McNeely that he wanted some more money and Mr. McNeely promised to see what he could do; later on Mr. McNeely had another paper and, when asked what it was, replied, "You just sign that—Mr. Wiggins, that will be all right"; that he thought it was like the other paper, and, when he asked who wrote it, Mr. McNeely said, "Our lawyer, you just sign it." He thereupon signed the paper. When asked what was said at the time about any further payment, he replied that Mr. McNeely said, "If you want any further help, let me know." He further testified that after signing the last paper he tried several times to see Mr. McNeely, but when he called somebody else would come to the door and say Mr. McNeely was not there; that then he tried to get him on the telephone, but Mr. McNeely would not answer; that in June, 1932, he did get him on the telephone and said, "Mr. McNeely, I need some help and you agreed to see me through," and Mr. McNeely said, "Mr. Wiggins you have brought suit now and I cannot talk to you, you go to see Mr. Wheeler." He went to see Mr. Wheeler and the latter told him that he had been employed to defend the case and had no authority to give him any money; that he asked Mr. Wheeler to see Mr. McNeely and let him know. On the following day he returned to Mr. Wheeler's office and asked what McNeely said, and Mr. Wheeler replied, "He said he would never pay you another damn cent."

With reference to the paper signed in February, McNeely testified that he read it over to appellee and the latter said he understood it and it was satisfactory. He stated that he had no other agreement or understanding about standing by appellee and seeing him through or attempting to obligate the company, but, when asked if he agreed to or said anything about standing by appellee, he replied:

"So far as the settlement is concerned, no, but this did happen. When I paid him the Three Hundred Dollars, then I told him I would see him through the hospital and take care of him as long as he was in the hospital and pay the hospital bill."

B. B. Hook and A. T. Grainger, who witnessed the signature to the writing dated February 26, 1930, testified that Mr. McNeely read the writing to appellee before it was signed.

As sustaining the contention that the evidence was sufficient to take the case to the jury on the issues as to fraud in procuring the settlement relied on by appellant, appellee cites and relies on the case of Illinois Cent. R. Co. v. Vaughn, 111 S. W. 707, 709, 33 Ky. Law Rep. 906. In that action an employee was seeking to recover damages for personal injuries sustained when two of the company's trains collided. The company by answer pleaded settlement and filed with its answer a written agreement evidencing a settlement and compromise of the matter. In avoidance of this plea, the plaintiff replied that he was procured by fraud to sign the agreement; that he did not read the contract, and the agent, acting for the company at the time, represented that the only matter involved was the time plaintiff had lost from work while laid up by his injuries and assured him that any claim for damages was not affected by the settlement. He further pleaded that because of intense suffering and being under the influence of opiates administered to relieve his pain he did not comprehend what he was doing. The evidence for the plaintiff fully sustained his pleading, but the company's agent who acted for it in the settlement denied that any such representations were made. It was held that the evidence on the issue of fraud was sufficient to take the case to the jury, but the judgment was reversed because of error in instructions, etc. In discussing the evidence on the issues of fraud, it was said:

"The plaintiff's weakened physical condition; his state of mind, not yet being accustomed to his maimed condition; his anxiety to return to his work, and unwillingness to believe he was permanently injured; the inequality of the position of the parties to the transaction; the assuring manner and words of the claim agent; perhaps the use of the opiate—all these are evidence which tend to sustain plaintiff's claim of imposition, aside from the direct representations claimed by plaintiff to have been made to him. The situation was such as to relax the rule that a party who signs a contract without reading it will not be heard to say that it does not express his intention. Besides, the gross inadequacy of the compensation, if the plaintiff was injured to the extent he says he was, requires but slight additional evidence of fraud in its obtention or execution to overturn such a settlement."

As to the effect to be given a writing of this character, it was further said:

"If plaintiff executed the writing understandingly, and without being deceived by the fraudulent misrepresentations of appellant's claim agent, he is bound by it, no matter whether he 'accepted the payment' of the $100 in full settlement or not. * * * Where parties set down their contract in a written memorial, it alone must be looked to for their meaning, if an intent may be gathered from its terms, and its effect is governed solely by the law, and not at all by the mental consideration of one of two parties to it; there being no plea of mistake. * * * No, if he signed it in his right mind, and without imposition, that should be the end of this case."

In this case, as in the Vaughn Case, there was no plea of mistake, so it only remains to be determined whether the evidence was sufficient to take the case to the jury on the question of fraud.

Under the scintilla rule, an issue should be submitted to the jury where there is any evidence, even though slight, tending to sustain it; however, the more recent trend of authority is that, to satisfy the scintilla rule, there must be something of substance and probative value and not mere surmise or speculation. There is little if anything to indicate that the claim agent made any fraudulent representations when the first paper was signed and less to show any fraud or misrepresentation when the last paper was signed; but, be that as it may, the period of limitation did not expire until nearly six months after the last paper was signed, although appellee testified that he made repeated efforts to see the claim agent but did not get in communication again until June, 1932, and did not institute action until October 15, 1932, and more than two years and seven months after he received the payment of $100 when the last writing was signed.

As sustaining his plea of estoppel, appellee relies on the case of Chesapeake & Nashville Ry. v. Speakman, 114 Ky. 628, 71 S. W. 633, 24 Ky. Law Rep. 1449, 63 L. R. A. 193. In that case it appears that the company represented to its injured employee that, if he would forego suit against it, his time would go on and his wages be paid until he recovered, that he would be paid for his injuries when time showed their extent, and that

he would have a permanent position so long as he lived or for as long as the superintendent remained on the road. The evidence disclosed that the promises were renewed from time to time until the period of limitation had expired and that the company did keep him on its pay roll from the date of his injuries until he left its service a short time before he instituted suit. It will therefore be seen that an entirely different situation is presented here, since no promises or representations were made to appellee and no payment made to him after he signed the last paper filed with appellant's answer and this as already indicated was nearly six months before limitation had run, and considerably over two years before his action was instituted.

If any doubt should remain concerning the sufficiency of the evidence to take the case to the jury on the question of fraud in procuring the settlement relied on by appellant, it wholly fails to sustain his plea of estoppel, and it follows that the court erred in not instructing the jury to find for appellant.

For the reasons indicated, the judgment is reversed, and cause remanded for proceedings consistent with this opinion.